UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JAMES WALSH and BELINDA WALSH, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No. 3:15-cv-1036 |
| | ) | Judge Aleta A. Trauger |
| STATE FARM FIRE AND CASUALTY COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM

Pending before the court is a Motion for Summary Judgment (Docket No. 15) filed by the defendant, State Farm Fire and Casualty Company ("State Farm"), to which the plaintiffs, James and Belinda Walsh (the "Homeowners"), have filed a Response in opposition (Docket No. 30), and State Farm has filed a Reply (Docket No. 34). For the reasons stated herein, the motion will be granted.

## BACKGROUND & PROCEDURAL HISTORY

This insurance dispute arises from allegations that State Farm, a provider of property insurance coverage to the Homeowners, denied the Homeowners' insurance claim for damage to their property that was caused by sinkhole activity, despite the fact that the Homeowners had met all conditions of the policy and the policy covered sinkhole damage. (Docket No. 1-2.) It is undisputed that the Homeowners' residential property (the "Property") was insured by State Farm, that their policy includes sinkhole damage (but not other types of damage to the land rather than the dwelling), and that the Homeowners' insurance claim submitted on September 15, 2014 for damages to their dwelling and surrounding land (the "Claim") was denied by State

1

Farm on the grounds that the damage was not caused by sinkhole activity or any other covered calamity. The dispute in this action focuses solely on whether State Farm was justified in its denial of the Claim.

It is further undisputed that, upon receiving the Claim, State Farm sent representative Jeremy Moran to visit the Property and to observe the damage on September 19, 2014. On September 23, 2014, State Farm retained Conestoga-Rovers & Associates ("CRA") to investigate the damage to the Property and determine the cause. It is undisputed that CRA is a preferred vendor for State Farm and that it has regularly conducted investigations related to sinkhole claims and provided expert testimony in lawsuits over denied sinkhole claims on behalf of State Farm. Further, it is undisputed that State Farm did not provide to the Homeowners its contractual agreement with CRA for the investigation done on the Claim, nor did it disclose to the Homeowners the rate at which CRA was compensated for its investigation.

On October 1, 2014, CRA inspected the Property. On November 4, 2014, CRA issued a report of its findings, certified by Tennessee licensed geologists Bernd T. Rindermann and Norman R. Meeks, Tennessee licensed geotechnical engineer Steven A. Janosik, and licensed structural engineer Charles N. Stewart.[1] (Docket No. 17-3 (the "CRA Report").) The CRA Report includes the following:

- Statement that the CRA Report is based on a visual assessment of the Property and geotechnical evaluation of the soil conditions.
- Statement that: "[I]t is CRA's opinion that the cause of the [Claim] is not sinkhole activity. In our opinion, the analysis conducted by CRA, as documented in this report, was of sufficient scope to eliminate sinkhole activity as the cause of the damage to the home within a reasonable professional probability." (Docket No. 17-3, p.2.)
- Identification of the following causes of damage to the Property, based on evaluation of the Property and the surrounding subsurface conditions:

---

[1] Documentation of these licenses is found in the record at Docket No. 31-3.

- Differential slab/foundation movement (settlement) in response to saturation and frost penetration as well as compression/consolidation of poorly compacted underlying fill soil deposits and cyclical slope creep;
- Shrinkage of cementitious materials based on properties of the materials themselves that are likely to cause cracks that can then be exacerbated by soil conditions;
- Cyclical expansion and contraction of various building materials in response to changes in temperature and humidity levels;
- Drywall "nail pop" caused by improper installation and/or withdrawal of fasteners due to shrinkage and swelling of the wood caused by changes in humidity;
- Excess moisture entering the ceiling near the family room fireplace due to inadequately sealed joints, roof penetrations, utility pipes or other mechanisms unrelated to foundation settlement; and
- Separation of the rear porch slab from the main structure due to a lack of structural continuity between the slab and the home, exacerbated by soil conditions and cyclical slope creep.
- Listing of the following work that was performed by CRA:
  - Site visit to document the condition of the Homeowners' residence and Property and to interview the Homeowners and their representative;
  - Review of the Sumner County Assessor of Property website for information about the Property and other local geologic, topographic, and soil information;
  - Geophysical testing, including an electrical resistivity imaging ("ERI") survey;
  - Relative elevation floor survey;
  - Excavation of a test pit to expose the geometric features of the perimeter wall and foundation of the dwelling;
  - Performance of two hand auger borings and three Standard Penetration Test borings to explore both shallow and deeper soil conditions, up to 19 feet;
  - Review and classification of recovered soil samples; and
  - Assessment of soil conditions revealed in the borings and evaluation of the relationship between the soil and the damage to the Property.
- Summary of the features of the Property and a detailed description of the damage, including an explanation of how the above identified causes of the damage were assessed.
- Detailed discussion of the findings of the above tests and inspections.
- Explanation of the sinkhole activity assessment, including a definition of the different types of sinkholes and how they are caused, and an enumeration of sinkhole indicators.

- Application of the above information about sinkhole indicators to the results of the above listed tests and observations, reaching the conclusion that sinkhole activity was not the cause of the damage to the Property.

It is further undisputed that, on December 1, 2014, State Farm sent a letter to the Homeowners, explaining that the Claim would be denied based on the findings in the CRA Report. On March 10, 2015, counsel for the Homeowners sent a letter to State Farm, disputing the denial of the Claim and requesting that the Claim be reopened for further review. On April 13, 2015, State Farm responded, affirming the denial of the Claim but inviting the Homeowners to submit any information supporting their challenge to the decision. There is no evidence in the record that the Homeowners ever submitted any additional information to State Farm.[2] The only evidence in the record that purports to support a finding that the damage to the Property was caused by sinkhole activity is the expert report of the Homeowners' retained engineer, Sonny Gulati of Florida Testing & Environmental, Inc. (Docket No. 16-1 ("Gulati Report").) Mr. Gulati has B.S. and M.S. degrees from the Illinois Institute of Technology and is a Registered Professional Engineer in the state of Florida, a Registered Environmental Property Assessor, a Certified Florida Environmental Assessor, and a Licensed Water Well Contractor in Florida. (Docket No. 16-2.) His resume indicates that he has extensive experience in conducting geotechnical and geoenvironmental investigations, including sinkhole evaluations.

According to the Gulati Report, Mr. Gulati did not conduct any testing or investigation of his own into the damage to the Property. Rather, the Gulati Report is based solely on Mr. Gulati's review of the CRA Report. The Gulati Report makes the following conclusion: "Florida Testing & Environmental, Inc. does not concur with CRA's conclusions in that it is our

---

[2] The Homeowners state that they provided State Farm with a copy of the Gulati Report (defined herein), and that State Farm continued to deny the Claim, but the Homeowners do not confirm that this information was exchanged prior to the filing of the instant action. (Docket No. 31, ¶13.)

professional opinion that based on the data presented sinkhole activity is present at the subject residence. It is my opinion that structural damage has occurred at the subject residence." (Docket No. 16-1, p. 3.) The Gulati Report later concludes that "adverse impact due to sinkhole activity at the subject residence cannot be ruled out" (*id.* at p. 4), but nowhere in the Gulati Report is there a definitive finding that the damage to the Property that is the subject of the Claim was *caused by* sinkhole activity.[3] The Gulati Report contains only the following information to support the above conclusion:

- Recounts the damage to the Property that was noted in the CRA Report.
- Asserts the opinion that the floor slab on the Property needs remediation, including underpinning, based on 1) the CRA Report's finding of approximately 5.25 inches of variation in the basement floor and 2 inches variation in first story floor, and 2) the Standard Specifications for Tolerances for Concrete Construction and Materials (ACI-117-06 Section 4.4.1) issued by the American Concrete Institute's guideline that floor slab alignment should have no more than ½ inch deviation in any ten feet.
- Recounts the CRA Report's finding, based on geophysical testing, that there were no "geologically significant features of interest that might be considered anomalous to other areas surveyed across the property."
- Recounts the results of the CRA's Standard Penetration Test borings and asserts the opinion, without explanation, that "the data reported in all five borings indicated varying degree of systematic weakening."
- Concludes that adverse impact due to sinkhole activity cannot be *ruled out* due to the following:
    " - The subject structure is underlain by karst conditions.
    - The minor differential settlement is not the cause of distress at the subject residence. The cause of the damage is deep rooted. The structure was built in 1983 and the distress was noticed recently and is still ongoing.
    - Closed depressions which might indicate sinkhole activity were located within one mile of the subject residence.
    - The laws of gravitational compaction and original horizontality have both been violated at this site.

---

[3] In his later-filed Affidavit, Mr. Gulati states that The Gulati Report does, in fact, conclude that the damage to the Property was caused by sinkhole activity. (Docket No. 30-3, ¶5.) This is not entirely clear, however, from the Gulati Report itself. Nevertheless, as discussed more fully below, the conclusion that the damage to the Property was caused by sinkhole activity is inadmissible for the same reasons that the other opinions proffered by Mr. Gulati are inadmissible.

5

> - The main house floor slab has undergone significant differential settlement of up to 2.0-5.25 inches. This is excessive in light of geologic conditions and the fact that sinkholes don't usually manifest themselves on the ground surface. As pressure grouting is not intended to correct floor slab elevation difference, it is recommended that the sinkhole remediation must include underpinning.
> - The main house concrete floor slab has undergone abnormal amount of differential settlement due to underlying karst conditions."

(*Id*. at p. 4.) Mr. Gulati does not explain the methodology he applied to reach the conclusion that sinkhole activity is present on the Property, let alone explain the methodology to support his finding that such sinkhole activity may have caused the damage to the Property that is the subject of the Claim.[4]

On June 19, 2015, the Homeowners filed a breach of contract claim against State Farm in the Circuit Court for Sumner County, Tennessee. The Homeowners further allege bad faith and malicious conduct by State Farm and seek punitive as well as compensatory damages. (*Id*.) The action was removed to federal court on September 28, 2015. (Docket No. 1.)

On February 24, 2017, State Farm filed a Motion for Summary Judgment (Docket No. 15), along with a Memorandum in support (Docket No. 16), and a Statement of Undisputed Material Facts with attachments (Docket No. 17). State Farm argues that it is justified in its position that the damage to the Property was not caused by sinkhole activity or any calamity covered by the Homeowners' policy and, thus, the Claim was rightly denied. State Farm also argues that the Gulati Report is inadmissible as evidence that the damage to the Property was caused by sinkhole activity, because it does not meet the standard for an admissible expert

---

[4] The Homeowners also attach to their Response a drilling log from Richard Simmons Drilling Co, Inc. (Docket No. 30-5.) It appears that this is intended to further support the Gulati Report, but the Gulati Report does not cite to this document at all, let alone explain how it supports a finding that the damage to the Property may have been caused by sinkhole activity. The significance of the drilling report alone is unclear without additional explanation.

opinion under Rule 26(a)(2)(B).[5]

On May 5, 2017, the Homeowners filed a Response in opposition (Docket No. 30), along with a Response to State Farm's Statement of Undisputed Material Facts (Docket No. 31), and a number of exhibits (Docket Nos. 32-33).  Attached to the Homeowners' Response is the Affidavit of Sonny Gulati, which reiterates that he reviewed the CRA Report and adds that it is Mr. Gulati's professional opinion that 1) sinkhole activity is a cause of the damage to the Property; and 2) "CRA's opinions are inadequate, and not supported by the data presented." (Docket No. 30-3, ¶¶5-6.)  There is no additional explanation given for how these conclusions were reached.

On May 19, 2017, State Farm filed a Reply.  (Docket No. 34.)

## LEGAL STANDARD

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial."  *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving

---

[5] The parties both cite to other cases in which opinions of Mr. Gulati have been admitted or excluded, respectively.  Because the conclusions and methodologies of the opinions are different in each case and the decisions about admissibility were based on the opinions themselves, rather than Mr. Gulati's credentials alone, the court will not consider these other cases in deciding whether Mr. Gulati's opinions in this case are admissible but will instead base its determination solely on the court's analysis of Mr. Gulati's opinions proffered in this action.

7

party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 252 (1986). An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

## ANALYSIS

Tennessee Law provides as follows:

> Upon receipt of a claim for sinkhole loss under a policy providing sinkhole loss coverage, an insurer must meet the following standards in investigating the claim:
> (1) The insurer shall make an inspection of the insured's premises to determine if there has been structural damage to the covered structure resulting from possible sinkhole activity;
> (2) If, upon the investigation pursuant to subdivision (d)(1), the insurer determines that there is no sinkhole loss, the insurer may deny the claim;
> (3) If the insurer concludes that structural damage to a covered structure is inconsistent with sinkhole activity, then prior to denying the claim, the insurer shall obtain a written certification from an engineer, a professional geologist, or other qualified individual stating that:
>   (A) An analysis was conducted of sufficient scope to provide an opinion within a reasonable professional probability on the cause of the observed structural damage; and
>   (B) Sinkhole activity did not cause the observed structural damage;
>       . . .

Tenn. Code. Ann. § 56-7-130(d) (the "Sinkhole Statute").

The Homeowners' claims in this action hinge on a dispute as to whether sinkhole activity caused the damage to the Property underlying the Claim. The Homeowners mischaracterize

8

State Farms' position to be that the dispute is solely about whether State Farm followed the Sinkhole Statute and that compliance with the Sinkhole Statute renders State Farm "immune from suit." (Docket No. 30, p. 5.) To the contrary, State Farm's position is that, having complied with the Sinkhole Statute, State Farm can only be liable for breach of contract if the Homeowners can show that such reliance was improper. The court agrees with this assertion. While it is true that the undisputed evidence shows that State Farm complied with the Sinkhole Statute in denying the Claim, evidence that the damage to the Property was, nevertheless, caused by sinkhole activity could still provide a basis for the Homeowners to prevail on their claim for breach of contract. The Homeowners are, thus, correct in their argument that the CRA Report's finding that sinkhole activity did not cause the damage underlying the Claim does not resolve this dispute. The question before the court on the pending motion, however, is whether the Homeowners have offered evidence of sinkhole damage that would properly support a triable issue of fact as to whether the CRA Report was incorrect and/or State Farm's reliance on it improper. As discussed more fully below, the Homeowners have no such evidence and, therefore, their claim for breach of contract must be dismissed.[6]

The Homeowners are correct that State Farm is asserting a *Daubert* challenge to exclude the opinions of their expert witness, Sonny Gulati. Because the Gulati Report is central to the Homeowners' claim, the court will first consider whether it is admissible before turning to the question of whether the evidence in the record can properly support a triable issue of fact.

I.      **The Gulati Report Is Not Admissible**

---

[6] The Homeowners also point out that State Farm is not by law *required* to rely on the findings of CRA. This assertion, however, is of no import because State Farm is certainly permitted by law to rely on the CRA Report in denying the Claim and, absent evidence that the CRA Report is incorrect or State Farm's reliance on it is otherwise improper, the Homeowners' action cannot proceed.

9

Expert testimony in federal court is governed by Federal Rule of Evidence 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

In its "gate-keeping" role, a trial court must evaluate the relevance and reliability of all expert testimony, whether the testimony offered is "scientific" or not. *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 147 (1999) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-90 (1993)). Also, under Rule 26(a)(2)(B), an expert report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Failure to disclose this information in the expert report mandates exclusion of the expert's opinion on motion, at a hearing, or at trial, unless the violation was harmless or substantially justified. Fed. R. Civ. P. 37(c)(1); *see also R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 271-72 (6th Cir. 2010).

The Gulati Report is inadmissible because it contains no explanation of the methodology used or the application of the methodology to the facts justifying the conclusion that sinkhole activity was present at the Property and cannot be ruled out as the cause of the damage underlying the Claim. Moreover, the Gulati Report does not explain the methodology by which it determines that the CRA Report, or the investigation on which it was based, is in some way inaccurate or unreliable. The Gulati Report, thus, does not meet the criteria of *Daubert* or Rule 702 and may not be introduced as evidence that the damage to the Homeowners' property was

10

Case 3:15-cv-01036 Document 36 Filed 07/17/17 Page 10 of 13 PageID #: 787

caused by sinkhole activity. Nor can the Gulati Report be used to show that the CRA Report is incorrect or that it was improper for State Farm to rely on it.

Further, even if the court were to find admissible Mr. Gulati's opinion that he is unable to rule out sinkhole activity as the cause of the damage to the Homeowners' property for the reasons enumerated in his report, this does not provide sufficient evidence to support the legal claim at issue in this action. Mr. Gulati does not have the same expertise as the authors of the CRA Report, nor did he conduct any additional testing or investigation. The fact that he in unable, from his professional standpoint and based on his review of the data, to rule out sinkhole activity as the cause of the damage giving rise to the Claim does not show that the CRA Report was incorrect or inaccurate in its finding that sinkhole activity was not the cause of the damage, given the expertise of the parties who prepared the CRA Report. Nor does it show that State Farm breached its statutory or contractual obligations to the Homeowners in relying on the CRA Report to deny the Claim.[7]

## II.     There is no Evidence to Support a Triable Issue of Fact

Because the court finds – for the reasons discussed above – that Mr. Gulati's expert opinions are not admissible under Rule 702 and *Daubert*, and because there is no other evidence of sinkhole activity having caused the damage to the Property or of breach of contract by State Farm, the court finds that there is no triable issue of fact as to the Homeowners' breach of contract claim. Further, since the Homeowners have failed to place evidence in the record to support a finding that State Farm breached its contract with the Homeowners, they certainly

---

[7] State Farm also argues that the Gulati Affidavit attached to the Homeowners' Response – which, unlike the Gulati Report, definitively opines that the damage to the Property was caused by sinkhole activity – was untimely disclosed as an expert report. The court need not reach this issue, however, because, even if timely, the Gulati Affidavit does not constitute an admissible expert opinion for the same reasons that his report is not admissible. There is no discussion of the methodology used to reach the conclusions stated therein or the application of the methodology to the facts of the case.

11

cannot proceed with a claim that State Farm did so in bad faith.[8] The Homeowners argue that the court should infer bad faith from State Farm's decision to retain CRA, based on the fact that CRA has been an expert on behalf of State Farm in the past. The Homeowners also ask the court to draw inferences of bad faith from the fact that State Farm has not produced its financial agreement with CRA. These things do not on their own, however, give rise to an inference that CRA's conclusions are biased, let alone that State Farm's retention of CRA and reliance on the CRA Report were carried out in bad faith.

Finally, the Homeowners cite the fact that they made a demand to State Farm to reconsider the Claim as grounds to allow them to pursue their claim for bad faith. While such a demand is necessary under the Tenn. Code Ann. § 56-7-105, it is not sufficient. As a matter of law, the Homeowners need to have evidence in the record to support their claim in order to proceed. Because they do not, there is no triable issue of fact as to whether State Farm acted in bad faith. The Homeowners argue that the burden is on State Farm to show that its process for selecting experts to investigate sinkhole claims is unbiased, but they cite no authority for this proposition. To the contrary, the burden is on the Homeowners, as plaintiffs in this action, to show that there is a triable issue of fact. Because they have not met this burden, their claims will be dismissed.

---

[8] As State Farm points out in its briefing, there is no common law bad faith claim for punitive damages available in this context, as bad faith in the handling of a sinkhole claim by an insurance carrier is governed exclusively by Tenn. Code Ann. § 56-7-105 (mandating liability of up to an additional 25% of liability on the loss for bad faith refusal to pay insurance claims). *See Heil Co. v. Evanston Ins. Co.*, 690 F.3d 722, 728 (6th Cir. 2012). The Homeowners' citation to *Akers v. Allstate Prop. & Cas. Ins. Co.*, No. 2:14-CV-72, 2015 WL 11005023 (E.D. Tenn. Sept. 28, 2015), as an example of a case where common law punitive damages were permitted in the context of processing a sinkhole claim is misplaced. *Akers* expressly states that these damages were allowed because the case arose prior to the enactment of Section 56-7-105 but that such damages would not be available for cases arising thereafter. 2015 WL 11005023, at *5.

## **CONCLUSION**

For the foregoing reasons, State Farm's Motion for Summary Judgment will be granted and this action will be dismissed.

An appropriate Order will enter.

_____
ALETA A. TRAUGER
United States District Judge